The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PAUL O'BEIRNE, an individual,

    Plaintiff,

v.

TROY STAFFORD, an individual,

    Defendant.

No. 2:15-cv-01330-RSL

**DECLARATION OF JOHN H. JAMNBACK IN SUPPORT OF PLAINTIFF PAUL O'BEIRNE'S MOTION FOR ATTORNEY'S FEES AND COSTS**

John H. Jamnback declares as follows:

1. I am a member of Yarmuth LLP, counsel for Plaintiff Paul O'Beirne ("O'Beirne") in the above-captioned lawsuit. I make this declaration upon personal knowledge and, if called to testify, could and would testify competently to the facts set forth herein.

2. Plaintiff seeks an award of attorney's fees and costs incurred in connection with defendant Troy Stafford's ("Stafford") failure to appear at his deposition in Phoenix, Arizona, and O'Beirne's subsequent successful Motion to Compel (Dkt. No. 49).

3. I am a 1987 graduate of George Washington University Law School. I have been practicing law, primarily as a litigator, for over 31 years. Before joining Yarmuth in 2002, I practiced law with the firm Garvey Schubert Barer in Washington, D.C. and Seattle,

DECLARATION OF JAMNBACK IN SUPPORT OF
PLAINTIFF'S MOTION FOR ATTORNEY'S FEES
No. 2:15-cv-01330-RSL - Page 1

Yarmuth LLP
1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
phone 206.516.3800   fax 206.516.3888

Washington. Prior to that, I was a partner in a small litigation firm in Washington, D.C. I also worked as a Public Defender in the Commonwealth of Virginia for over three years.

4. I have tried more than 30 jury trials in state and federal courts, including satellite piracy cases, securities fraud claims, commercial contract disputes, constitutional law and civil rights violations, employment cases, tort claims, and felony criminal matters; and over 50 non-jury cases before federal, state and administrative law judges. In addition, I have presented over 25 cases as lead counsel before arbitration panels of the NYSE, the NASD, the AAA, and various state-appointed arbitration panels. I have briefed and argued appeals in the state appellate courts of Virginia and Washington, and in the federal appellate courts of the District of Columbia, Fourth and Ninth Circuits.

5. Attached hereto as **Exhibit 1** is a spread sheet that provides a true and correct itemization of Yarmuth's time entries for the requested attorneys' fees in the amount of $4,380.00 and costs in the amount of $1,159.61 incurred in this matter, and which O'Beirne seeks to recover from the defendant Stafford.

6. My billing rate for this matter was $365 per hour. This is a courtesy discount for the client from my usual billing rate of $500 per hour, which I know to be comparable to the billing rates charged by Seattle attorneys with my experience and background. My time entries on **Exhibit 1** are identified as timekeeper "JHJ."

7. Some courts in the Ninth Circuit have looked to the "*Laffey* Matrix" when considering the reasonableness of the hourly rates charged for services performed by attorneys and paralegals. *See, e.g.*, *IO Group, Inc. v. Jordan*, No. C 09-0884 MEJ, 2010 WL 2231793 (N.D. Cal. June 1, 2010). Attached hereto as **Exhibit 2** is a true and correct copy of the latest available *Laffey* Matrix (2015-19), which I downloaded from the United States Department of Justice website on February 6, 2019. Following the methodology used in *IO Group* to account for market differentials, the *Laffey* Matrix indicates that an

DECLARATION OF JAMNBACK IN SUPPORT OF
PLAINTIFF'S MOTION FOR ATTORNEY'S FEES
No. 2:15-cv-01330-RSL - Page 2

Yarmuth LLP
1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
phone 206.516.3800   fax 206.516.3888

hourly billing rate of $594 is reasonable for an attorney with my level of experience (31 years).[1]

8.  The amount of attorney's fees sought by O'Beirne by this motion was determined by reviewing the actual monthly invoices my firm submitted to O'Beirne. Those invoices contain summaries of the number of hours billed by law firm personnel who worked on this matter. For purposes of this motion, I was the only timekeeper who worked on this matter. I kept contemporaneous time records containing detailed descriptions of the work I did and the amount of time I spent performing that work.

9.  The requested attorney's fees are for 12 hours of my time spent on my efforts to take Stafford's deposition, beginning with Stafford's failure to attend his deposition, the resulting successful motion to compel, and this fee request. I have not included a request for fees for my time spent preparing for the deposition. I also excluded most of the time spent communicating with my client, as indicated by the highlighted timekeeper entries on Exhibit 1 that I zeroed out.

10. I am familiar with the rates charged by comparable law firms in Seattle and nationally. Based upon my knowledge of the work performed in connection with O'Beirne's successful motion to compel and my review of the fees for which an award is sought, I believe the amount of fees of $4,380.00 sought by O'Beirne is reasonable and accurately stated.

11. O'Beirne is also requesting that the Court order Stafford to pay the costs of my travel to Phoenix, Arizona for the deposition, the cost of the court reporter for his deposition, and finally postage, messenger, and Lexis costs related to the motion to compel

---

[1] To adjust the hourly rates approved in the "*Laffey* Matrix," which is calibrated for the Washington, D.C. area, I consulted the 2018 salary table on the United States Office of Personnel Management website, available at https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/2018/general-schedule/. That schedule indicates that the Washington-Baltimore-Northern Virginia area salary rates include a locality adjustment of 28.22%, while the Seattle-Tacoma-Olympia area rates include a locality adjustment of 25.11%. I then adjusted the *Laffey* Matrix to account for the locality differentials between Washington, D.C. and Seattle.

DECLARATION OF JAMNBACK IN SUPPORT OF
PLAINTIFF'S MOTION FOR ATTORNEY'S FEES
No. 2:15-cv-01330-RSL - Page 3



Yarmuth LLP
1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
phone 206.516.3800   fax 206.516.3888

1. totaling $1,159.61, as itemized on Exhibit 1. My requested travel costs within this total
2. were $833.65 and consist of roundtrip coach airfare from Seattle to Phoenix, Uber to and
3. from the airport in Phoenix, parking at SeaTac, meals, and one night in a hotel. The court
4. reporter cost is only for a statement of non-appearance for Troy Stafford. I have
5. highlighted and zeroed out on Exhibit 1 the non-appearance transcript charge for his wife
6. Xochitl Stafford, who also failed to show for her deposition.

I declare under penalty of perjury that the foregoing is true and correct.

DATED February 7, 2019.

*/s/ John H. Jamnback*
John H. Jamnback

DECLARATION OF JAMNBACK IN SUPPORT OF
PLAINTIFF'S MOTION FOR ATTORNEY'S FEES
No. 2:15-cv-01330-RSL - Page 4

Yarmuth LLP
1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
phone 206.516.3800  fax 206.516.3888

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I placed in the U.S. Mail, postage prepaid, a copy of the foregoing document addressed to the following:

Troy Stafford
9439 E. Trailside View
Scottsdale, AZ 85255

Troy Stafford
15560 N. Frank Lloyd Wright Blvd.
Suite B4-299
Scottsdale, AZ 85260

I also emailed the foregoing document to the following email addresses:

tstafford4@icloud.com

troy@gscapital.us

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

DATED: February 7, 2019, at Seattle, Washington.

*/s/ Sue Stephens*
Sue Stephens, Legal Assistant

DECLARATION OF JAMNBACK IN SUPPORT OF
PLAINTIFF'S MOTION FOR ATTORNEY'S FEES
No. 2:15-cv-01330-RSL - Page 5

735.01 tb040901 2/7/19



Yarmuth LLP
1420 Fifth Avenue, Suite 1400
Seattle, Washington 98101
phone 206.516.3800   fax 206.516.3888

# EXHIBIT 1

Exhibit 1

| Client | TK | Date | Rate | Hours | Amount | Description |
|---|---|---|---|---|---|---|
| Fees | | | | | | |
| 735.01 | JHJ | 10/23/2018 | $ 365.00 | 1.00 | $ 365.00 | Attend depositions for the Staffords. |
| 735.01 | JHJ | 10/30/2018 | $ 365.00 | 0.30 | $ - | Respond to inquiry from client. |
| 735.01 | JHJ | 10/31/2018 | $ 365.00 | 0.30 | $ - | Exchange emails with client re: status. |
| 735.01 | JHJ | 11/1/2018 | $ 365.00 | 0.20 | $ - | Exchange email correspondence with client. |
| 735.01 | JHJ | 12/7/2018 | $ 365.00 | 1.50 | $ 547.50 | Draft motion to compel and for sanctions. |
| 735.01 | JHJ | 12/11/2018 | $ 365.00 | 1.80 | $ 657.00 | Draft motion to compel and supporting declaration. |
| 735.01 | JHJ | 12/12/2018 | $ 365.00 | 0.30 | $ 109.50 | Draft meet and confer letter to Stafford. |
| 735.01 | JHJ | 12/17/2018 | $ 365.00 | 0.60 | $ 219.00 | Draft motion to compel. |
| 735.01 | JHJ | 12/18/2018 | $ 365.00 | 2.00 | $ 730.00 | Draft motion to compel and for sanctions, and supporting declaration. |
| 735.01 | JHJ | 12/19/2018 | $ 365.00 | 2.90 | $ 1,058.50 | Draft motion to compel, declaration and order. |
| 735.01 | JHJ | 1/10/2019 | $ 365.00 | 0.20 | $ 73.00 | Review status of motion to compel deposition. |
| 735.01 | JHJ | 1/28/2019 | $ 365.00 | 0.30 | $ 109.50 | Review order and prepare related correspondence to client. |
| 735.01 | JHJ | 1/31/2019 | $ 365.00 | 0.70 | $ 255.50 | Draft motion for attorney fees. |
| 735.01 | JHJ | 2/5/2019 | $ 365.00 | 0.70 | $ 255.50 | Review fee and cost records and draft declaration. |
| Total | | | | 12.00 | $ 4,380.00 | |
| Expenses | | | | | | |
| 735.01 | MM | 10/22/2018 | | | $ 833.65 | Travel Expense, Phoenix, AZ for Depositions, J. Jamnback (10/22 - 10/23) |
| 735.01 | MM | 11/30/2018 | $ - | 0.00 | $ - | Transcript re: Statement of Nonappearance regarding Xochitl Stafford. (Buell) |
| 735.01 | MM | 11/30/2018 | $ - | 0.00 | $ 225.25 | Transcript re: Statement of Nonappearance regarding Troy Stafford. (Buell) |
| 735.01 | MM | 12/20/2018 | $ - | 0.00 | $ 8.00 | Seattle Legal Messenger to 700 Stewart St. #2310. |
| 735.01 | MM | 1/2/2019 | $ - | 0.00 | $ 5.78 | Postage (12/1 to 12/31) |
| 735.01 | MM | 1/8/2019 | $ - | 0.00 | $ 86.93 | Lexis Online Research (December 2018) |
| Total Expenses | | | | | $ 1,159.61 | |

# EXHIBIT 2

# USAO ATTORNEY'S FEES MATRIX — 2015-2019

*Revised Methodology starting with 2015-2016 Year*

Years (Hourly Rate for June 1 – May 31, based on change in PPI-OL since January 2011)

| Experience | 2015-16 | 2016-17 | 2017-18 | 2018-19 |
|---|---|---|---|---|
| 31+ years | 568 | 581 | 602 | 613 |
| 21-30 years | 530 | 543 | 563 | 572 |
| 16-20 years | 504 | 516 | 536 | 544 |
| 11-15 years | 455 | 465 | 483 | 491 |
| 8-10 years | 386 | 395 | 410 | 417 |
| 6-7 years | 332 | 339 | 352 | 358 |
| 4-5 years | 325 | 332 | 346 | 351 |
| 2-3 years | 315 | 322 | 334 | 340 |
| Less than 2 years | 284 | 291 | 302 | 307 |
| Paralegals & Law Clerks | 154 | 157 | 164 | 166 |

*Explanatory Notes*

1. This matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks has been prepared by the Civil Division of the United States Attorney's Office for the District of Columbia (USAO) to evaluate requests for attorney's fees in civil cases in District of Columbia courts. The matrix is intended for use in cases in which a fee-shifting statute permits the prevailing party to recover "reasonable" attorney's fees. *See, e.g.,* 42 U.S.C. § 2000e-5(k) (Title VII of the 1964 Civil Rights Act); 5 U.S.C. § 552(a)(4)(E) (Freedom of Information Act); 28 U.S.C. § 2412(b) (Equal Access to Justice Act). The matrix has not been adopted by the Department of Justice generally for use outside the District of Columbia, or by other Department of Justice components, or in other kinds of cases. The matrix does **not** apply to cases in which the hourly rate is limited by statute. *See* 28 U.S.C. § 2412(d).

2. A "reasonable fee" is a fee that is sufficient to attract an adequate supply of capable counsel for meritorious cases. *See, e.g., Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 552 (2010). Consistent with that definition, the hourly rates in the above matrix were calculated from average hourly rates reported in 2011 survey data for the D.C. metropolitan area, which rates were adjusted for inflation with the Producer Price Index-Office of Lawyers (PPI-OL) index. The survey data comes from ALM Legal Intelligence's 2010 & 2011 Survey of Law Firm Economics. The PPI-OL index is available at http://www.bls.gov/ppi. On that page, under "PPI Databases," and "Industry Data (Producer Price Index - PPI)," select either "one screen" or "multi-screen" and in the resulting window use "industry code" 541110 for "Offices of Lawyers" and "product code" 5411105411110 for "Offices of Lawyers." The average hourly rates from the 2011 survey data are multiplied by the PPI-OL index for May in the year of the update, divided by 176.6, which is the PPI-OL index for January 2011, the month of the survey data, and then rounding to the nearest whole dollar (up if remainder is 50¢ or more).

3. The PPI-OL index has been adopted as the inflator for hourly rates because it better reflects the mix of legal services that law firms collectively offer, as opposed to the legal services that typical consumers use, which is what the CPI-

Legal Services index measures. Although it is a national index, and not a local one, *cf. Eley v. District of Columbia*, 793 F.3d 97, 102 (D.C. Cir. 2015) (noting criticism of national inflation index), the PPI-OL index has historically been generous relative to other possibly applicable inflation indexes, and so its use should minimize disputes about whether the inflator is sufficient.

4. The methodology used to compute the rates in this matrix replaces that used prior to 2015, which started with the matrix of hourly rates developed in *Laffey v. Northwest Airlines, Inc.* 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985), and then adjusted those rates based on the Consumer Price Index for All Urban Consumers (CPI-U) for the Washington-Baltimore (DC-MD-VA-WV) area. Because the USAO rates for the years 2014-15 and earlier have been generally accepted as reasonable by courts in the District of Columbia, *see* note 9 below, the USAO rates for those years will remain the same as previously published on the USAO's public website. That is, the USAO rates for years prior to and including 2014-15 remain based on the prior methodology, *i.e.*, the original *Laffey* Matrix updated by the CPI-U for the Washington-Baltimore area. *See Citizens for Responsibility & Ethics in Washington v. Dep't of Justice*, 142 F. Supp. 3d 1 (D.D.C. 2015) and Declaration of Dr. Laura A. Malowane filed therein on Sept. 22, 2015 (Civ. Action No. 12-1491, ECF No. 46-1) (confirming that the USAO rates for 2014-15 computed using prior methodology are reasonable).

5. Although the USAO will not issue recalculated *Laffey* Matrices for past years using the new methodology, it will not oppose the use of that methodology (if properly applied) to calculate reasonable attorney's fees under applicable fee-shifting statutes for periods prior to June 2015, provided that methodology is used consistently to calculate the entire fee amount. Similarly, although the USAO will no longer issue an updated *Laffey* Matrix computed using the prior methodology, it will not oppose the use of the prior methodology (if properly applied) to calculate reasonable attorney's fees under applicable fee-shifting statutes for periods after May 2015, provided that methodology is used consistently to calculate the entire fee amount.

6. The various "brackets" in the column headed "Experience" refer to the attorney's years of experience practicing law. Normally, an attorney's experience will be calculated starting from the attorney's graduation from law school. Thus, the "Less than 2 years" bracket is generally applicable to attorneys in their first and second years after graduation from law school, and the "2-3 years" bracket generally becomes applicable on the second anniversary of the attorney's graduation (*i.e.*, at the beginning of the third year following law school). *See Laffey*, 572 F. Supp. at 371. An adjustment may be necessary, however, if the attorney's admission to the bar was significantly delayed or the attorney did not otherwise follow a typical career progression. *See, e.g., EPIC v. Dep't of Homeland Sec.*, 999 F. Supp. 2d 61, 70-71 (D.D.C. 2013) (attorney not admitted to bar compensated at "Paralegals & Law Clerks" rate); *EPIC v. Dep't of Homeland Sec.*, 982 F. Supp. 2d 56, 60-61 (D.D.C. 2013) (same). The various experience levels were selected by relying on the levels in the ALM Legal Intelligence 2011 survey data. Although finer gradations in experience level might yield different estimates of market rates, it is important to have statistically sufficient sample sizes for each experience level. The experience categories in the current USAO Matrix are based on statistically significant sample sizes for each experience level.

7. ALM Legal Intelligence's 2011 survey data does not include rates for paralegals and law clerks. Unless and until reliable survey data about actual paralegal/law clerk rates in the D.C. metropolitan area become available, the USAO will compute the hourly rate for Paralegals & Law Clerks using the most recent historical rate from the USAO's former *Laffey* Matrix (*i.e.*, $150 for 2014-15) updated with the PPI-OL index. The formula is $150 multiplied by the PPI-OL index for May in the year of the update, divided by 194.3 (the PPI-OL index for May 2014), and then rounding to the nearest whole dollar (up if remainder is 50¢ or more).

8. The USAO anticipates periodically revising the above matrix if more recent reliable survey data becomes available, especially data specific to the D.C. market, and in the interim years updating the most recent survey data with the PPI-OL index, or a comparable index for the District of Columbia if such a locality-specific index becomes available.

9. Use of an updated *Laffey* Matrix was implicitly endorsed by the Court of Appeals in *Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516, 1525 (D.C. Cir. 1988) (en banc). The Court of Appeals subsequently stated that parties may rely on the updated *Laffey* Matrix prepared by the USAO as evidence of prevailing market rates for litigation counsel in the Washington, D.C. area. *See Covington v. District of Columbia*, 57 F.3d 1101, 1105 & n.14, 1109 (D.C. Cir. 1995), *cert. denied*, 516 U.S. 1115 (1996). Most lower federal courts in the District of Columbia

have relied on the USAO's *Laffey* Matrix, rather than the so-called "*Salazar* Matrix" (also known as the "LSI Matrix" or the "Enhanced *Laffey* Matrix"), as the "benchmark for reasonable fees" in this jurisdiction. *Miller v. Holzmann*, 575 F. Supp. 2d 2, 18 n.29 (D.D.C. 2008) (quoting *Pleasants v. Ridge*, 424 F. Supp. 2d 67, 71 n.2 (D.D.C. 2006)); *see, e.g., Joaquin v. Friendship Pub. Charter Sch.*, 188 F. Supp. 3d 1 (D.D.C. 2016); *Prunty v. Vivendi*, 195 F. Supp. 3d 107 (D.D.C. 2016); *CREW v. U.S. Dep't of Justice*, 142 F. Supp. 3d 1 (D.D.C. 2015); *McAllister v. District of Columbia*, 21 F. Supp. 3d 94 (D.D.C. 2014); *Embassy of Fed. Republic of Nigeria v. Ugwuonye*, 297 F.R.D. 4, 15 (D.D.C. 2013); *Berke v. Bureau of Prisons*, 942 F. Supp. 2d 71, 77 (D.D.C. 2013); *Fisher v. Friendship Pub. Charter Sch.*, 880 F. Supp. 2d 149, 154-55 (D.D.C. 2012); *Sykes v. District of Columbia*, 870 F. Supp. 2d 86, 93-96 (D.D.C. 2012); *Heller v. District of Columbia*, 832 F. Supp. 2d 32, 40-49 (D.D.C. 2011); *Hayes v. D.C. Public Schools*, 815 F. Supp. 2d 134, 142-43 (D.D.C. 2011); *Queen Anne's Conservation Ass'n v. Dep't of State*, 800 F. Supp. 2d 195, 200-01 (D.D.C. 2011); *Woodland v. Viacom, Inc.*, 255 F.R.D. 278, 279-80 (D.D.C. 2008); *American Lands Alliance v. Norton*, 525 F. Supp. 2d 135, 148-50 (D.D.C. 2007). *But see, e.g., Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 13-15 (D.D.C. 2000). Since initial publication of the instant USAO Matrix in 2015, numerous courts similarly have employed the USAO Matrix rather than the *Salazar* Matrix for fees incurred since 2015. *E.g., Electronic Privacy Information Center v. United States Drug Enforcement Agency*, 266 F. Supp. 3d 162, 171 (D.D.C. 2017) ("After examining the case law and the supporting evidence offered by both parties, the Court is persuaded that the updated USAO matrix, which covers billing rates from 2015 to 2017, is the most suitable choice here.") (requiring re-calculation of fees that applicant had computed according to *Salazar* Matrix); *Clemente v. FBI*, No. 08-1252 (BJR) (D.D.C. Mar. 24, 2017), 2017 WL 3669617, at *5 (applying USAO Matrix, as it is "based on much more current data than the *Salazar* Matrix"); *Gatore v. United States Dep't of Homeland Security*, 286 F. Supp. 3d 25, 37 (D.D.C. 2017) (although plaintiff had submitted a "'great deal of evidence regarding [the] prevailing market rates for complex federal litigation' to demonstrate that its requested [*Salazar*] rates are entitled to a presumption of reasonableness, . . . the Court nonetheless concludes that the defendant has rebutted that presumption and shown that the current USAO Matrix is the more accurate matrix for estimating the prevailing rates for complex federal litigation in this District"); *DL v. District of Columbia*, 267 F. Supp. 3d 55, 70 (D.D.C. 2017) ("the USAO Matrix ha[s] more indicia of reliability and more accurately represents prevailing market rates" than the *Salazar* Matrix). The USAO contends that the *Salazar* Matrix is fundamentally flawed, does not use the *Salazar* Matrix to determine whether fee awards under fee-shifting statutes are reasonable, and will not consent to pay hourly rates calculated with the methodology on which that matrix is based. The United States recently submitted an appellate brief that further explains the reliability of the USAO Matrix vis-à-vis the *Salazar* matrix. *See* Br. for the United States as *Amicus Curiae* Supporting Appellees, *DL v. District of Columbia*, No. 18-7004 (D.C. Cir. filed July 20, 2018).